BREAUX, C. J.
Jacob S. Casper, curator of Charles Lazarus, sued the defendant for damages in the sum of $10,000.
The charge is that the defendant is liable in that sum because plaintiff met with an accident for which defendant is at fault, resulting in the breaking of his right arm, and thereby euipxjling him. He was riding at the time of the accident as a passenger on the Tulane belt line of street cars, operated between Canal street and Tulane avenue by *606 the New Orleans Railway & Light Company. 1-Ie was sitting on the right-hand side in front of the ear going up from Canal street. He was near or next to the window. His right arm was resting on the sill of the window.
His arm was broken above the elbow.
He was (it is averred) seated in the car, with his arm and elbow in the window. Plaintiff adds in his petition:
“In the usual and customary position for passengers, and without fault or negligence on his part, his elbow was struck by an object which the railway and light company had suffered or permitted to be placed in close and dangerous proximity to its track.”
The injury to the elbow, as a result of the impact with a board on the outside, was severe, and caused intense pain, and from the effect of which, after a considerable time, plaintiff alleged he had not yet recovered. He has recovered to an extent. There is an impediment to the movement of the joint.
Por brevity’s sake, we will hereafter refer to the New Orleans Railway & Light Company as the railway company, to the Consumers’ Electric Light Company as the electric company, and to the American Construction Company as the construction company.
The answer of the railway company is:
“That, if Chas. M. Lazarus was injured as alleged, it was not through any fault of the respondent railway company, or through defect of its tracks or the equipment of its cars.
“That the cause of the injury was in resting with his arm out of the window, and that it came in contact with a box to store working tools in, erected alongside of respondent’s track by the construction company and the electric company.
“That they are responsible, because they erected the box to store the working tools in despite respondent’s protest, and kept it where it was.”
The railway company urged the additional grounds that the construction company and the electric company maintained this box in violation of law; and the company further urged that, if for any reason it is found liable for the injury, the said electric company and the said construction company are responsible, and that whatever judgment should be rendered against it should be rendered against these companies.
The electric company joined issue in an answer denying all liability to plaintiff. It also interposed an exception to the answer of the railway company, setting out that, as appears from the allegations of the railway company, there is no ground for which it can possibly be held as a warrantor of the railway company; in other words, that the railway company is without legal cause of action against the electric company.
The construction company also interposed an exception on various grounds, and later in its answer denied all liability.
The judge of the district court ordered a severance for the trial. The cause was tried by jury.
The jury, after having heard it, returned a verdict in favor of plaintiff against the railway company in the sum of $1,500.
The learned judge of the district court, on an application for a new trial, ordered a new trial and rescinded the order permitting the severance of the case, holding that the -whole case, contradictorily with all parties, would be tried as one case, as it was proper that they should be all before the court.
On the second trial the jury found a verdict against the construction company in the sum of $125, and decided against the plaintiff in so far as he demanded anything in his petition of the electric company and the railway company.
A judgment having been rendered by the district court, grounded upon the verdict of the jury, the plaintiff appealed.
The construction company, the only company condemned to pay anything (on the second trial, the only trial presenting issues before us for decision) has not specially appealed, and has not asked for an amendment before this court.
The building that the construction company *608 was erecting for the electric company was large. The workmen placed the tools and ■other implements in a shed near by. There was also near it a concrete mixer.
They used the banquette and part of the roadway and the neutral ground to within «bout 18 inches of the line of the car as it runs.
The car and the track were in good condition.
A permit had been obtained by the eon■struction company from the authorities to put structures on the sidewalk and the neutral ground.
The testimony shows that these cars travel «round what is known as “the belt” nine times a day. On the day in question the ear was on its ninth trip, at about 5 o’clock in the afternoon.
Plaintiff must have been familiar with these cars, for he rode on them to and from his home three and four times a day, and passed the ground opposite the electric company’s building.
A large preponderance of the testimony shows that the track was not burdened with ■anything from the direction of the building which could have struck the plaintiff, even if his arm had been extended out of the window several inches.
Eighteen inches was the nearest structure. The sheds- and mixer were in line, and not nearer than that number of inches. Between these two there was a post and one and perhaps two planks nailed.
While the witnesses do not all agree as to the precise distance they were from the passing car, it does not appear that they were in dangerous proximity to the car.
There is no question but that those who •erect public buildings and carriers who pass on the streets must not erect structures in ■such proximity as to render them dangerous.
There was no such obstruction, we infer from the evidence.
We have carefully read the testimony of each witness on the subject,- and have not found that one has fixed with' any degree of certainty the fact that there was .a projection which caused the accident.
As relates to the burden of proof — one of the questions raised in this ease — the plaintiff urged that it was with defendant.
We agree with the view expressed that the burden of proof is upon the carrier to show that it has done all that was reasonable and all that was required by prudence and foresight. Spurlock v. Shreveport Traction Company, 118 La. 1, 42 South. 575.
We only say that it seems to us that this requirement has been met to an extent sufficient at any rate to shift the burden of proof. There is a turning point in evidence, which it seems to us has been reached by the defendants in this case, and it devolved upon plaintiff to sustain his suit by proving that he was not negligent himself and by proving at least the main facts of the accident. <
We have before stated that the case was tried twice — once against the railway company alone. A new trial was granted, and then the case was tried contradictorily with all the parties to the suit.
Plaintiff testified at the first, also at the second, trial. The account he gave of the accident at the first differs very much from the account he gave at the second trial. At each of these trials he stated that he was sitting as before mentioned on the right-hand side of the car near the front, but further on there was conflict in his testimony.
At the first trial he said that the plank made a kind of V; that there was a post in the center, to which in some way, not fully explained, there was a plank nailed; that it became loosened at the time the car passed, and he was struck by it. To quote literally from his testimony:
“That on this day this plank came into the window and hit me here.”
*610 On the second trial he stated that he was reading a letter, an unimportant statement, save that it tends to show that his attention was engaged by something else than mere riding; that he must have been taken by surprise, and did not observe closely the incidents of the accident.
He testified, further, that opposite the tool box, standing about 18 inches from the track, a board loose at one end “came to the window,” and he “pushed it out of the window.” That was the board, as he states, that struck his elbow just before he arose from his seat.
That a lady said just then, “Look out!”
This was on the direct examination. On cross-examination he stated that the projection which struck him was a piece of timber attached to both sides of the toolhouse; that the “piece was entirely loose”; that he took hold of it just as he “would a brickbat” and threw it out of the window to prevent it hurting the lady passenger sitting near. He pushed it out — threw it out, he stated at another time.
He testified that this board measured about nine feet in length and about ten inches wide. He threw it out with his left hand.
This account of plaintiff, who was the only witness who saw the accident, was not explained sufficiently to enable us to form a conclusion with any degree of certainty as to the cause of the accident. At one moment’ we would be led to infer that the board was attached to the toolhouse or to the post before mentioned, with one end loose — that is not attached to anything; at another, that it was entirely detached, and that plaintiff was struck by the plank while sitting in the car, and that he quickly rose and threw it out.
The theories advanced do not justify a decree for the plaintiff.
There was a board on the ground the day after the accident, which plaintiff took to be the board by which he was hit; but in the light of other testimony than his own it cannot be as he stated. It was certainly not the plank which plaintiff thinks he so vigorously handled and threw out of the window.
Another of the features of the case which we do not find satisfactorily explained is that he received the blow above the joint on the after part of the arm. The testimony leads to the unavoidable inference that the blow came from the front, and that, if it was as plaintiff stated it was, it would have struck the fore part of the arm.
Plaintiff, through learned counsel, has made the most of the allegations of the railway company in its answer. He, through learned counsel, charged that the allegations made it evident that the railway company knew that the structure before mentioned was in dangerous proximity to the railway company’s track.
The defendant railway company comes near the danger line for its cause by its admission. None the less it cannot be construed as sufficient of itself. Admitting a danger — • i. e., admitting that the structures were erected in dangerous proximity to the railway line — is not the admission of the cause of the accident. It still remained for the plaintiff to explain satisfactorily how the accident occurred. The court must be satisfied, from his own account and that of his witnesses, that by the alleged negligence of one or all the defendants they are liable, even though one of the defendants admits that the structure was in dangerous proximity.
Prom the foregoing views, the conclusion inevitably follows that the railway company and the electric company are not liable. Now as to the construction company the cause must, to some extent, be considered in a different light.
The construction company was condemned in the lower court to pay a small amount. It has not joined in the appeal, and has ask *612 ed for no amendment to reduce and cancel the judgment as to it.
Under the practice that has always been followed, no change in the judgment or alteration can be made unless the appellee prays for it. This the construction company, appellee, has failed to do. We are constrained under the unbending rule of practice to affirm the judgment as to it.
For reasons assigned, the judgment of the district court is affirmed.